UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHRISTOPHER RIST,                                    Case No. 1:05-cv-492

        Plaintiff,                                    Dlott, J.
                                                     Black, M.J.
   vs.

THE HARTFORD FINANCIAL
SERVICES GROUP,

        Defendant.

## REPORT AND RECOMMENDATION[1] THAT DEFENDANT'S MOTION TO DISMISS (Doc. 12) BE GRANTED, AND THIS MATTER BE REMANDED TO THE ADMINISTRATOR OF THE PLAN

Plaintiff initiated this action on July 7, 2005 by filing a complaint in the Hamilton County Court of Common Pleas against the Hartford Financial Services Group alleging breach of contract and breach of the duty of good faith and fair dealing under Ohio law. Plaintiff is seeking to recover long-term disability benefits. Hartford removed this civil action to this Court on July 21, 2005. (Doc. 1)

This case is now before the Court on Hartford's motion to dismiss and/or for summary judgment (Doc. 12), and the parties' responsive memoranda and supporting documents (Docs. 25, 31, 35, and 36).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

## I.  BACKGROUND AND FACTS

Plaintiff was formerly employed by Imperial Adhesives.  (Doc. 1, Ex ¶ 3).

Imperial Adhesives is a subsidiary of Sovereign Specialty Chemicals, Inc. ("Sovereign").

By virtue of his employment with Imperial Adhesives, Plaintiff was offered the

opportunity to participate in Sovereign's group long-term disability insurance benefits

(the "Plan") as a benefit of his employment.  *Id*. at ¶ 6.  The Plan was issued and insured

by Continental Casualty Company ("CNA").[2]  (Affidavit of Renae L. Waters, Manager of

Underwriting for Hartford Life Insurance Group, at ¶ 6, attached to Doc. 12).

*A.      The Plan*

The Plan's insurance policy is issued to Plaintiff's employer and provides that

Hartford "will pay the Monthly Benefit for each month of Total Disability which

continues after the Elimination Period."  (Policy of Insurance and Administrative Manual,

attached to the Affidavit of Bruce Luddy, Director of Litigation and Appeals at the

Hartford Life Group Benefits Division, Doc. 12, Ex. 3 at bates-stamped page POL 0015).

The policy defines "Total Disability" to mean that throughout a 180-day

elimination period, and for the first 24 months, an "Insured Employee, because of Injury

or Sickness, is: (1) continuously unable to perform the substantial and material duties of

the Insured Employee's regular occupation; (2) under the regular care of a licensed

physician other than the Insured Employee; and (3) not gainfully employed in any

---

[2]  In December 2003, Hartford Life and Accident Insurance Group purchased the stock of CNA.  Immediately after the acquisition, Hartford changed CNA's name to Hartford Life Group Insurance Company ("Hartford"). (Luddy Aff. ¶ 11.)

occupation for which the Insured Employee is or becomes qualified by education, training or experience."  (POL 0015).

After the monthly benefit has been paid for 24 months, the definition of "Total Disability" changes to mean that "because of Injury or Sickness, the Insured Employee is: (1) continuously unable to engage in any occupation for which the Insured Employee is or becomes qualified by education, training or experience; and (2) under the regular care of a licensed physician other than the Insured Employee."  (POL 0015)

An Administrative Manual was also included as part of the policy.  (POL 0023-30.) That manual advises the employer that:  "The following information will help you administer your disability insurance program."  (POL 0024.)  The manual then advises that the employer is to give all employees "enrollment cards as soon as they become eligible. Employees must enroll within 30 days after they become eligible to avoid the late enrollment procedures described below.  Each eligible employee must be given an opportunity to enroll.  All completed enrollment cards are to be kept on file by you."  (*Id*.)

B.      *Plaintiff's Claim for Benefits*

Plaintiff worked as a chemist for Imperial Adhesives for 28 years.  In the early 1990's, Plaintiff was diagnosed with colon cancer.  His cancer was treated, and he continued to work.  However, in 2002, Plaintiff's gastrointestinal problems associated with the cancer became so severe that he was not longer able to travel to customer work sites. (Doc. 1, Ex.1 at ¶ 4.)  Imperial then moved Plaintiff to an in-house position, and he continued to work until February 2003.  At that time, however, Plaintiff stopped working

-3-

due to severe abdominal pain, diarrhea and bowl incontinence.

In May 2003, Plaintiff's employer sent to Hartford the Plaintiff's claim for benefits under the Plan. *(Id.* at ¶10). Plaintiff claimed disability due to colon cancer, irritable bowel syndrome, and short gut. On August 4, 2003, Hartford advised Plaintiff that his claim for benefits had been approved "through 09/20/2003. Your entitlement to benefits beyond that date will be determined by your ongoing treatment and medical evidence from your providers." (AR 0060).

On September 14, 2004, Hartford submitted a "Functional Assessment Tool" form to Plaintiff's treating physicians, Dr. Neack and Dr. Decktor. (AR 0056-59.) The form asked for the physicians' opinions regarding whether Plaintiff was currently "capable of performing full time work of a Color Lab Chemist . . . ." (AR 0056.) The form further requested "medical or clinical evidence" to support the physicians' opinions, which evidence could include "office notes, diagnostics results, physical exam findings, and physical therapy summaries." (*Id.*)

On September 23, 2004, Hartford informed Plaintiff that it had not received the Functional Assessment Tool forms from his treating physicians. Dr. Neack had informed Hartford that he could not complete the form because he had not seen Plaintiff. Dr. Decktor did not complete and return the form. Accordingly, Hartford informed Plaintiff that if the forms were not received by October 26, 2004, processing of his claim would be suspended and his claim file closed.

Dr. Neack, Dr. Decktor, and Dr. Chu, Plaintiff's oncologist, advised Hartford that

-4-

they do not perform work function assessments.  (Doc. 1, Ex. 2).  However, in October

2004, Plaintiff submitted a questionnaire filled out by Dr. Chua that was used by

Plaintiff's attorney for Social Security consideration.  The form did not include

supporting medical documentation.  After submitting the questionnaire from Dr. Chua,

Plaintiff's attorney requested reinstatement of the disability benefits and noted that his

client is "willing to cooperate, but you never sent him the form."  (AR 177, attached to

Doc. 12.)

On November 4, 2004, Hartford sent a letter to Plaintiff's counsel, enclosing a

copy of the policy, the final suspension letter, and copies of the Functional Assessment

Forms that were forwarded to Mr. Rist's attending physicians for completion.  (AR 0049.)

Thereafter, in February 2005, Plaintiff's attorney again wrote to Hartford advising

it that Plaintiff's treating physicians do not perform work assessments and demanding

reinstatement of Plaintiff's benefits.  Additionally, in April 2005, Plaintiff's attorney

submitted a questionnaire signed by Dr. Neack, wherein he listed Plaintiff's diagnosis as

"colon cancer s/p resection 1993," diarrhea, and coronary artery disease.  (AR 0168.)

The next day, Hartford acknowledged receipt of the questionnaire and advised

Plaintiff that the "information provided was not sufficient to reopen the claim file."

Hartford further advised that for the claim to be reopened, Plaintiff must provide medical

documentation (consultations, labs, diagnostic tests, etc.) supporting Dr. Neack's opinion

that Plaintiff was unable to work.

In April 2005, Plaintiff advised Hartford that he was in the process of gathering

post-April 2004 medical records and questioned whether the claim investigation complied with ERISA's notification requirements.  Plaintiff further questioned Hartford's right to suspend benefits under the Plan upon failure to provided updated medical records. Thereafter, in May 2005, Plaintiff submitted copies of Dr. Neack's medical records.  On June 15, 2005, Hartford advised Plaintiff's attorney that it was "forwarding Mr. Rist's claim to a Medical Case Manager for review of the recently received medical records for a determination if benefits from 10/2004 are payable."  (AR 0041.)

C.     *Procedural History*

Instead of waiting for a determination based on the recently provided medical records, on June 27, 2005, Plaintiff filed the instant action against Hartford alleging claims under Ohio law for breach of contract and breach of the duty of good faith and fair dealing.  (Doc. 1, Ex. 1).

Thereafter, on April 6, 2006, Hartford moved to dismiss (or in the alternative for summary judgment), arguing that Plaintiff's claims are governed exclusively by ERISA, and, as such, Plaintiff's state law claims are preempted by ERISA.  (Doc. 12).  In support of its motion, Hartford attached, *inter alia*, the affidavit of Renae L. Waters, Manager of Underwriting for Hartford Life Insurance Group, to demonstrate that the Plan at issue was governed by ERISA.

Plaintiff then asked for discovery, claiming that he had spoken with Joy Faas, the former benefits director of Sovereign, who suggested that Hartford's custodian of records, Ms. Waters, lacked personal knowledge to testify about the creation of the Plan. (*See*

-6-

Doc. 24, Tr. of Tel. Hearing, May 16, 2006 at 4:5-13.)  Plaintiff's request was granted,

and he then deposed Ms. Waters.  Thereafter, Plaintiff filed his response to Defendants'

motion to dismiss and/or for summary judgment and attached to it a declaration from Joy

Faas.  Hartford subsequently took the deposition of Ms. Faas.

## II.  STANDARD OF REVIEW

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In ruling on a Fed. R. Civ. P.

12(b)(6) motion to dismiss, the factual allegations in the complaint must be taken as true

and construed in a light most favorable to plaintiff.  *Morgan v. Church's Fried Chicken*,

829 F.2d 10, 12 (6th Cir. 1987); *see also Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955,

1965 (2007).[3]

## III.  ANALYSIS

Here, Hartford asserts that Plaintiff's claims are governed by ERISA and that this

matter should be remanded back to the Plan Administrator to assure exhaustion of

administrative remedies.  Plaintiff argues, however, that the Plan at issue falls within

ERISA's Safe Harbor Regulations, which exclude employer-provided insurance plans

from ERISA coverage if certain criteria are met.  Upon careful review, and for the

---

[3] Matters outside the pleadings are not to be considered in deciding a motion to dismiss under Fed. R. Civ.P. 12(b)(6).  *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 88-89 (6th Cir. 1997).  However, when a defendant attaches documents to a motion to dismiss that are central to the plaintiff's complaint, the documents are properly considered part of the pleadings and, therefore, the court may consider these documents without converting the defendant's motion to one for summary judgment.  *Id*. at 89.  Thus, if a plaintiff raises issues that require consideration of the terms of an ERISA plan, the court may properly consider exhibits setting forth the terms of the ERISA plan at issue in deciding the motion to dismiss.  *Id.; Borman v. The Great Atlantic & Pacific Tea Co.*, 64 Fed. Appx. 524, 528 n. 3 (6th Cir. 2003).

reasons that follow, the undersigned finds that Defendant's motion is well-taken.

A.    *Plaintiff's Claims are Governed by ERISA*

An "employee welfare benefit plan" is defined by ERISA to mean "any plan . . .

established or maintained for the purpose of providing for its participants or their

beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or

hospital care or benefits in the event of a sickness, accident, disability, death or

unemployment . . . ."  29 U.S.C. §1002(1).

In determining whether an "employee welfare benefit plan" as defined under

ERISA exists under the circumstances, the Sixth Circuit Court of Appeals adopts a

three-prong test:

> First the court must apply the so-called 'safe harbor' regulations established
> by the Department of Labor to determine whether the program was exempt
> from ERISA. …  Second the court must look to see if there was a 'plan' by
> inquiring whether 'from the surrounding circumstances a reasonable person
> [could] ascertain the intended benefits, the class of beneficiaries, the source
> of financing, and the procedures for receiving benefits.' …  Finally, the
> court must ask whether the employer 'established or maintained' the plan
> with the intent of providing benefits to its employees.

*Thompson v. American Home Assur.* Co., 95 F.3d 429 (6th Cir. 1996) (citations omitted).

i.    *The Safe Harbor Provision Does Not Apply*

The safe harbor regulations exclude an employer-provided insurance plan from

ERISA coverage if, and only if, the following four criteria are satisfied:

> (1)  the employer makes no financial contribution to policy premiums;
> (2)  the employee participation is voluntary;
> (3)  the employer's sole function is to permit the insurer to publicize the
> policy to employees and to collect payroll deductions; and
> (4)  the employer receives no consideration from the insurer.

-8-

*Thompson*, 95 F.3d at 435. Indeed, "a policy will be exempted under ERISA only if all four of the 'safe harbor' criteria are satisfied." *Id*.

Defendant asserts that the safe harbor criteria do not apply because the third criteria is not satisfied. That is, Defendant maintains that the Plan documents themselves demonstrate that the employer's involvement went well beyond merely permitting the insurer to publicize the policy and collect payroll deductions. Specifically, Defendant asserts that the Plan documents clearly demonstrate that the employer administered the long-term disability plan at issue. The undersigned agrees.

An employer "endorses" an insurance plan, and thereby removes the plan from the ERISA safe harbor, when the employer acts in a non-neutral manner towards the plan. *Thompson*, 95 F.3d at 436. That is, an employer violates neutrality if there is some factual showing of substantial employer involvement in the creation or administration of the plan. *Id*. Thus, an employer who negotiates the terms of the policy, or one who plays an active role in determining which employees will be eligible for the plan, violates neutrality and takes the plan outside the safe harbor. *Id*. Indeed, if an employer acts as the plan administrator, a finding of non-neutrality appropriate. *Id*. Neutrality is also violated, and the plan has been endorsed, when the employer provides a plan description that specifically refers to ERISA or states that the plan is governed by ERISA. *Id*. at 437.

In determining whether an employer endorses a plan, the following factors can be considered:

(1) whether the employer plays an active role in determining which

employees are eligible for coverage; (2) whether the employer negotiates
the terms of the policy; (3) whether the employer determines the level of
benefits; (4) whether the employer is named the plan administrator;
(5) whether the employer provides a summary plan description that refers to
ERISA; ( 6) whether the plain language states the policy is governed by
ERISA; (7) the name given to the policy; (8) the identity of the agent for
service of legal process; (9) the identity of the policy holder; (10) whether
the employer has the right to terminate the policy;  and (11) what role the
employer plays in the claim process.

*Adams v. UNUM Life Ins. Co. of Am.*, 200 F.Supp.2d 796, 800-01 (N.D. Ohio 2002).

Here, Renae Waters, the custodian of the Sovereign underwriting file, testified that based on her review of the documents, Sovereign had been involved in the creation of the Plan and the determination of what benefits the Plan would provide.  (Doc. 28, Waters Dep. at 59:3 - 60:10,  61:14 - 62:4).[4]  Waters further noted that Sovereign had chosen the essential components of the Long Term Disability Plan, including but not limited to the waiting period of the Plan, the elimination period, the actual benefit percentage, and the benefit maximum.  (*Id.* at 35:20 - 42:3)

Waters also pointed to documents illustrating that Sovereign, after the Plan went into effect, made changes to who was covered by the Plan and what benefits the Plan offered.  For example, Waters pointed to documents showing that Sovereign in October 2000 negotiated a change to the policy, obtaining a policy conversion benefit in exchange

___

[4]  As noted above, Plaintiff asserted that Waters, Hartford's custodian of records, lacked personal knowledge to testify about the Plan, and, therefore, her testimony should be discounted.  Instead, Plaintiff submitted the affidavit of Joy Faas, the former benefits manager of Sovereign, to establish that Sovereign did not endorse the policy.  (Doc. 25, Ex. 1).  Waters and Faas were both subsequently deposed.  (*See* Docs. 28, 30).  Ms. Waters testified as to the meaning and contents of the corporate records, and she produced and authenticated the underwriting file.  Thus, the undersigned finds that the deposition of Ms. Waters establishes that Plaintiff's objection is not well-taken. Moreover, Ms. Faas's testimony was consistent with that of Ms. Waters.  Faas testified that Sovereign decided who would be covered, what coverage would be offered, when that coverage would start, how much benefit would be paid, and whether residual disability benefits would be paid.  (Faas Dep. at 65:22 - 69:24.)

-10-

for a slightly higher premium.  (Waters Dep. at 63: 13-21; Exhibit D (correspondence regarding conversion policy.))

More importantly, Waters identified and authenticated a redacted version of the entire underwriting file as an exhibit to her deposition.  (*Id.* at 87:22-89-11)  The redacted underwriting file contained a copy of the Plan Booklet and Summary Plan Description (the "SPD").  (Doc. 31, Ex. G, Plan Booklet and SPD (the SPD is located at the end of the booklet).  The SPD identified Sovereign as the Plan Administrator and contained a statement of the employees' rights under ERISA.  *Id.*  Furthermore, the SPD listed Sovereign as the agent for service of process.  *Id.*

Thus, upon careful review, the undersigned finds that  the evidence establishes that Sovereign endorsed the LTD Plan – by determining who would be covered by the Plan and what benefits the Plan would offer, by acting as administrator, and by using Plan Booklets that identify rights under ERISA.  *See Thompson*, 95 F.3d at 436.  Thus, the safe harbor provisions do not govern this civil action.[5]

---

[5]  Defendant also maintains that the evidence establishes that the long term disability Plan in this case was not completely voluntary, and, therefore, it falls outside the ERISA safe harbor.  See *Scott v. Assurant Employee Benefits*, 2005 WL 2436819, at * 5 (W.D.Tenn. 2005) ("Participation in a plan is not completely voluntary when an employer guarantees a minimum participation rate at the time the policy contract is created and the rate of participation is subsequently met)" (citing *Chamblin v. Reliance Standard Life Ins. Co.*, 168 F.Supp.2d 1168, 1171 (N.D. Cal.2001)); *see also Meadows v. Employers Health Ins.*, 826 F.Supp. 1225, 1229 (D.Ariz.1993) ("If the benefit was meant to be an option for employees there would be no participation requirement of 75% or 100%.")  As Defendant argues, "[h]ere, Sovereign agreed to a minimum participation rate and [to] meeting that rate, by providing that at least 75% and a minimum of 357 employees enroll on or before such date.") (Doc. 31, Ex. H, POL 006.)

ii.     *The Remaining Two Prongs of the Thompson Test Are Also Satisfied.*

Here, all the factors of the second prong also have been satisfied.  The policy clearly provides benefits in the event of total disability and expressly defines what is meant by that term.  (POL 0015.)  The policy lists the class of beneficiaries as "[a]ll active, full-time* Non-Union Employees" and defines "active, full-time" to mean "an employee works at least 32 hours per week.  Part-time, temporary or seasonal employees are not eligible." (POL 0006.)  The source of the financing can also be ascertained from a review of the Plan documents, which indicate that employees "are paying 100% of their premiums."  (POL 0025.)  Furthermore, the policy sets forth clear procedures to be followed in order to file a claim for benefits pursuant to the Plan under the "Notice of Claim," "Claim Forms," and "Written Proof of Loss" provisions.  (POL 0017-18.)

Thus, the undersigned finds that "a reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits" under the Plan in this case.

As with the first and second prongs, the third prong of the *Thompson* test also supports the conclusion that the short and long-term disability plan at issue in this case is an "employee welfare benefit plan" as defined by ERISA.  Under the third prong, a court should determine "whether the employer established or maintained the plan with the intent of providing benefits to its employees." *Thompson*, 95 F.3d at 435.  In this case, as set forth above, the Administrative Manual demonstrates that Plaintiff's employer is responsible for administering the Plan, and the Plan clearly provides disability benefits to

-12-

its employees.

        *B.*     *Plaintiff's Claims Are Preempted by ERISA*

      ERISA preempts state law claims that "relate to" any employee benefit plan.  29 U.S.C. § 1144(a) (1988).  A law "relates to" an employee welfare plan if it has "a connection with or reference to such a plan."  *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990) (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 96-97 (1983)).  "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit."  *Cromwell v. Equicor-Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir.1991), *cert. dismissed,* 505 U.S. 1233 (1992).

      Therefore, courts have repeatedly held that a claim concerning the grant or denial of benefits under an employee welfare benefit plan has sufficient connection with and reference to the employee welfare benefit plan to find that the claim "relates to" that plan. *McMahan v. New England Mut. Life Ins. Co.*, 888 F.2d 426, 428-29 (6th Cir. 1989); *Daniel v. Eaton Corp*., 839 F.2d 263, 266 (6th Cir. 1988), *cert. denied*, 488 U.S. 826 (1988).

      Inasmuch as Plaintiff's complaint seeks damages for breach of contract and bad faith under an employee welfare benefit plan, there can be no dispute that Plaintiff's claims "relate to" an employee benefit plan, and, therefore, are governed exclusively by ERISA.  *See Cromwell*, *supra*, 944 F.2d at 1276 (holding that the Sixth Circuit has

"repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA" and finding that state law claims of promissory estoppel, breach of contract, negligent misrepresentation, and breach of good faith are "at the very heart of issues within the scope of ERISA's exclusive regulation and … preempted by ERISA."); *see also Schachner v. Blue Cross and Blue Shield of Ohio*, 77 F.3d 889, 898 (6th Cir. 1996) ("The Ohio common law right to a tort action for an insurer's bad faith breach of an obligation to pay a claim is pre-empted by ERISA.").  Accordingly, Plaintiff's state law claims for breach of contract and bad faith are preempted, and therefore fail to state a claim upon which relief may be granted, thereby requiring dismissal.

      C.    *Remand is Appropriate*

Moreover, even assuming that Plaintiff had pled such an ERISA cause of action, the complaint should nonetheless be dismissed because Plaintiff has failed to exhaust his administrative remedies under ERISA.

The Sixth Circuit Court of Appeals recognizes the holding in the vast majority of circuits and interprets ERISA to require that a claimant to exhaust his or her administrative remedies prior to filing suit in a court of law:  "The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court."  *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).  The Court of Appeals based its decision on 29 U.S.C. §1133(2) which states that "[e]very employee benefit plan shall . . . afford a reasonable opportunity

-14-

to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." *Id.*

Requiring exhaustion of administrative remedies enhances the ability of plan fiduciaries to expertly and efficiently manage their plan by preventing premature judicial intervention and assists the courts by ensuring that a plaintiff's claims have been fully considered by plan fiduciaries. *Wilczynski v. Lumberman's Mut. Cas. Co.*, 93 F.3d 397, 402 (7th Cir. 1996). The exhaustion requirement also gives effect to Congress' apparent intent, in mandating internal claims procedures, to promote consistent treatment of claims, to provide a non-adversarial dispute resolution process, to decrease the cost and time of claims settlement, and to minimize frivolous lawsuits. *Id. (citing Powell v. AT&T Communications, Inc.*, 938 F.2d 823 (7th Cir. 1991)).

Here, Plaintiff has not properly exhausted his administrative remedies pursuant to the Plan documents that require proof of continued disability. As noted above, Plaintiff did not timely provide the requested medical information. Although Plaintiff submitted copies of the requested records on May 26, 2005, he did not wait for Hartford's determination before filing the instant action. Thus, Plaintiff did not complete the administrative review process and judicial intervention is therefore improper at this time. *See Miller,* 925 F.2d at 986.

**IV.**

Accordingly, based on the foregoing, the undersigned hereby **RECOMMENDS** that Hartford's motion to dismiss (Doc. 49) be **GRANTED** consistent with the terms herein, and this matter be **REMANDED** to Hartford to complete the administrative review process.

**IT IS SO RECOMMENDED**.


Date:  August 6, 2008                          s/Timothy S. Black

                                                            Timothy S. Black
                                                            United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHRISTOPHER RIST,

          Plaintiff,                         Case No. 1:05-cv-492

     vs.                              Dlott, J.
                                   Black, M.J.

THE HARTFORD FINANCIAL
SERVICES GROUP,

          Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **TEN (10) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

-17-